Louise W. THOMAS, Petitioner–Respondent,

v.

DIRECTOR OF REVENUE, Respondent–Appellant.

No. 25881.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jeanne Velders, Assistant Attorney General, Jefferson City, MO, for respondent-appellant.

Christopher S. Warden, Joplin, MO, for petitioner-respondent.

JAMES K. PREWITT, Judge.

Director appeals the judgment of the trial court setting aside the revocation of Petitioner's driving privileges for Petitioner's failure to appear for a physical examination as requested by Director, pursuant to § 302.291, RSMo 2000. Upon its finding that Director failed to prove that there was good cause to believe Petitioner was incompetent or unqualified to drive, the trial court reinstated Petitioner's driving privileges.

On January 24, 2003, Director of Revenue ("Director"), acting through the supervisor of the License Issuance Section of the Drivers License Bureau, notified Louise W. Thomas ("Petitioner") that upon receiving "information that [her] driving abilities need to be re-evaluated," Petitioner would be required to submit to a physical examination by her regular attending physician. The notice informed Petitioner that failure to submit or failure to successfully pass the examination would result in revocation of driving privileges for one year. Petitioner applied for and received an extension of time to submit, however she did not comply with the request for a physical examination.

A notice from the administrator of the Driver and Vehicle Services Bureau, dated April 29, 2003, informed Petitioner that her driving privileges would be revoked for a period of one year beginning May 31, 2003, pursuant to § 302.291, RSMo. Petitioner timely filed her petition for review on May 23, 2003, as provided under § 302.311, RSMo 2000.

On August 22, 2003, the parties appeared for a hearing on the matter. Testifying for the Director was Patricia L. Sayles, a Licensing Tech II with the Drivers Licensing and Issuance department in Joplin. Ms. Sayles testified that on January 25, 2003, she administered a "road sign test" to Petitioner who was attempting to renew her driver's license. Ms. Sayles described the process, whereby an applicant looks into a "vision tester machine" displaying six road signs. The applicant is asked to identify the meanings of the signs. A minimum of four correct identifications is required for passage of this task. In the event an applicant cannot pass on the first attempt, the test can be administered one more time on that day. If an applicant cannot pass on the second attempt, he or she must return another day.

Ms. Sayles testified that Petitioner failed on her first attempt to identify the signs. Prior to Petitioner's second attempt, Ms. Sayles provided her with a study sheet containing sixteen highway signs utilized in the testing and suggested

that Petitioner review the study sheet. After a few minutes, Petitioner returned for her second attempt, which she failed to pass. According to Ms. Sayles, Petitioner failed two tests the following day, but successfully identified four of the six signs on the second attempt on the day after.

After Petitioner passed the road sign test, and thus qualified for renewal of her driver's license, Ms. Sayles completed a report to the Department of Revenue, Drivers License Bureau, stating: "I believe that [Petitioner] should be cited to take a physical and/or a driving test to determine [her] driving ability, or what restrictions, if any, are needed." Ms. Sayles informed Petitioner that she would receive a letter from the State instructing her to submit to either a driving test or a physical examination, and that failure to comply would result in revocation of her driving privileges.

The report form used by Ms. Sayles is provided by the Department of Revenue to its personnel. It is a printed form which states:

> This document should be completed when Department of Revenue personnel observe an obvious physical impairment of an applicant and when appropriate restrictions are not noted on the driver license as provided in Sections 3021.173, 302.291 and 302.301, RSMo. Information submitted on this form may result in a mandatory physical examination and/or a driver examination to determine the driving ability of the applicant.

Following the above-quoted instructions are spaces provided for applicant's name, address, date of birth, license number, and lines on which personnel are directed to

"[d]escribe impairment." Directly above spaces provided for the date, employee signature, title and office location is the following language: "Based on my observation of the above named person and information relayed to me by this individual, I believe that he/she should be cited to take a physical and/or a driving test to determine his/her driving ability, or what restrictions, if any, are needed."

In the space provided for a description of the impairment, Ms. Sayles wrote: "This lady has been in our office three days in a row and taken the road sign test twice. She even studied between test. She finally passed (barely) today. She still struggled with them alot." At the top of the form the following was written: "She took the road sign test 6 times before she could pass it."[1]

The Director relied upon the report in determining good cause existed to believe that Petitioner "is incompetent or unqualified to retain" her driver's license. As stated previously, the trial court found that this information alone was not sufficient.

Director presents one point relied on, stating:

> The trial court erred in reinstating [Petitioner's] driving privileges because its judgment is unsupported by substantial evidence, is against the weight of the evidence and the court misapplied the law, in that the Director had good cause to require [Petitioner] to submit to a physical examination which she failed to do and the issue of competency, qualifications to drive and eligibility to drive were not proper issues to be considered by the court.

---

1. The Department of Revenue furnishes guidelines to "field and central office staff" to aid in "evaluating driving impairments." These guidelines direct that employees documenting their observations of an applicant should "[w]rite facts, not just opinions or conclusions," and further states that "[t]he applicant's ability to safely drive, with or without restrictions, should be based on observed and reported facts."

Review is under Rule 84.13(d), formerly Rule 73.01(c), and cases stating that under such review, this court must sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Trotter v. Benton*, 811 S.W.2d 865, 867 (Mo.App.1991).

■ As § 302.291 is " 'quasi-penal and tend(s) to suspend or permit a forfeiture of a citizen's driving privileges,' ... the burden of proving that conditions exist to authorize the action taken 'falls heavily on the Director of Revenue.' " *Haynes v. Williams*, 522 S.W.2d 623, 627 (Mo.App. 1975) (quoting *Schuiling v. Scott*, 493 S.W.2d 4 (Mo.App.1973)).[2]

In determining whether the Director abused his discretion in the instant case turns on what evidence was available to the Director at the time he made the "good cause determination." *Burditt v. Dir. of Revenue*, 962 S.W.2d 426, 428 (Mo. App.1998). " 'Good cause' depends upon the circumstances of the individual case, and a finding of its existence lies largely in the discretion of the officer or court to which the decision is committed." *Wilson v. Morris*, 369 S.W.2d 402, 407 (Mo.1963).

■ In this instance, Director's determination turned on the report provided by Ms. Sayles. "The question here is one of law regarding the adequacy of the basis for the [D]irector's determination that good cause existed for the examination." *Trotter*, 811 S.W.2d at 867.

Based upon the information contained in Ms. Sayles' report, which we have set forth above, we do not find sufficient "good cause" for Director's determination that Petitioner should submit to a physical examination. Contrary to the instructions on the form on which the report was made, no physical impairment was shown. Failing the road sign test numerous times does not necessarily indicate a physical impairment. There well may be other causes for not passing the tests.

Haynes requires that facts be presented to the Director, as § 302.291 "contemplate[s] that the Director should [not] take the action there authorized when he is advised of no more than that someone else 'feels' or that someone has 'felt' that good cause exists." *Haynes*, 522 S.W.2d at 627.

The judgment is affirmed.

SHRUM, J., and BATES, J., concur.

**2.** § 302.291.1 states, in pertinent part:

The director, having good cause to believe that an operator is incompetent or unqualified to retain his or her license, after giving ten days' notice in writing by certified mail directed to such person's present known address, may require the person to submit to an examination as prescribed by the director. Upon conclusion of the examination, the director may allow the person to retain his or her license, may suspend, deny or revoke the person's license, or may issue the person a license subject to restrictions as provided in section 302.301. If an examination indicates a condition that potentially impairs safe driving, the director, in addition to action with respect to the license, may require the person to submit to further periodic examinations. The refusal or neglect of the person to submit to an examination within thirty days after the date of such notice shall be grounds for suspension, denial or revocation of the person's license by the director, an associate [division of the] circuit [court] or circuit court.